**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

ZACHARY D. THOMAS                                                PLAINTIFF

V.                            No. 4:25-cv-00758-BSM-PSH

FRANK BISIGNANO, Commissioner,
Social Security Administration                                   DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation, and those objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.    Introduction:

In December 2021, Zachary Thomas applied for Title II and Title XVI disability benefits alleging disability beginning January 1, 2018. (Tr. at 242–52). His claims were denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 114, 119, 133, 141, 149). On July 31, 2024, the ALJ denied Thomas's application. (Tr. at 13–26).

1

Thomas requested review of the ALJ's decision, and the Appeals Council denied his request on June 10, 2025. (Tr. at 237, 1). The ALJ's decision now stands as the final decision of the Commissioner, and Thomas seeks judicial review. For the reasons stated below, the Commissioner's decision should be affirmed.

## II.   The Commissioner's Decision:

The ALJ found Thomas had not engaged in substantial gainful activity since his alleged onset date. (Tr. at 16). At step two of the sequential five-step analysis,[1] the ALJ found Thomas's seizure disorder was a severe impairment. *Id*. After finding that the seizure disorder did not meet or medically equal a listed impairment, the ALJ determined that Thomas would be able to perform a full range of work at all exertional levels except that he could not perform work from unprotected heights; work involving firearms; work operating motor vehicles; or work involving ropes, ladders, or scaffolding. (Tr. at 18–19).

The ALJ found that Thomas had no past relevant work. (Tr. at 24). However, relying on the testimony of a Vocational Expert ("VE"), the ALJ found that a

---

[1]Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).

significant number of jobs existed in the national economy for someone Thomas's age with his education, work experience, and residual functional capacity ("RFC"). (Tr. at 24–25).   Those jobs included cleaner II (53,800 jobs), machine packager (83,300 jobs), and change house attendant (62,000 jobs). (Tr. at 25). The ALJ concluded that Thomas was not disabled. (Tr. at 25–26).

### III.   Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

It is not the task of the Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the Commissioner because there is contradictory evidence in the record. The test is whether there is substantial evidence

in the record as a whole to support the decision of the Commissioner. *Miller*, 784 F.3d at 477.

### B. Arguments on Appeal

Thomas makes three arguments on appeal: (1) that the ALJ's RFC determination is not supported by substantial evidence; (2) that the ALJ erred in evaluating medical equivalency at step three; and (3) that the ALJ's hypothetical was so deficient that the ALJ's reliance on the VE's testimony was misplaced. Because none of these arguments warrant reversal, the Court should affirm the Commissioner's decision.

### 1. RFC

Thomas first takes issue with the ALJ's RFC finding that Thomas could perform a full range of exertional work with specific seizure limitations. Thomas contends that the ALJ erroneously rejected Thomas's subjective complaints, and he argues that: (1) it is possible for him to suffer debilitating seizures that prevent him from working but also have normal physical examinations and be able to perform activities of daily living; (2) his normal electroencephalogram (EEG) test is of limited significance, because an EEG only captures brain activity at the time the test was performed; (3) the record shows that his seizures have worsened despite continually increasing the dosage of his medications; and (4) despite some evidence

of failure to take his medication, he was on seizure medications when his most recent seizures occurred in 2023 and 2024.

A claimant bears the burden of proof to establish his RFC, *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), which is "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must review all the relevant medical and other evidence when determining a claimant's RFC. *Id*. §§ 404.1545(a)(3), 416.945(a)(3). However, an ALJ is not required to include limitations that are not supported by the evidence. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). Furthermore, where substantial evidence in the record supports the ALJ's decision, this Court will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). A decision is not outside the zone of choice simply because a different conclusion could be reached. *Id*. If the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision. *Id*. (*citing Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).

As for an ALJ's evaluation of a claimant's subjective complaints of pain, "the ALJ must consider objective medical evidence, the claimant's work history, and

other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987)). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (quoting *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir. 1990)).

Thomas filled out seizure questionnaires and function reports in 2022 and 2023 asserting that he had "moderate to severe pain 'in direct correlation' with his tonic-clonic seizures" and that following a seizure, "he experienced migraines, confusion, . . . difficulty finding words, and limited ability to lift, move his extremities, and operate common motor controls." (Tr. at 19, 318, 324, 372, 375). Thomas "endorsed postictal dizziness, vision issues, edema, fatigue, sleepiness, and problems with balance, hand-eye coordination, speech, memory, and concentration"

following a seizure. (Tr. at 324). He indicated that his condition affected lifting, squatting, bending, standing, reaching, kneeling, talking, stair climbing, seeing, memory, completing tasks, concentration, following instructions, using his hands, getting along with others, and handling stress. (Tr. at 334, 380). At the hearing in May 2024, Thomas testified that he could not work due to grand mal, tonic-clonic seizures, and more recent focal seizures. (Tr. at 47–50). Thomas stated that he had postictal weakness and loss of coordination for weeks after a seizure. (Tr. at 47–48). The ALJ found that Thomas's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with and not wholly supported by objective evidence. (Tr. at 20). The ALJ considered Thomas's treatment records, Thomas's own statements regarding his abilities, and the medical opinions of state agency consultants in determining that Thomas's seizures were not totally disabling.

Thomas was treated at Dr. Andy's Family Practice from May 2018 through February 2024 by Dr. Anadaraj Subramanium. The ALJ described Thomas's treatment as "routine and conservative." *Id*. Although Dr. Subramanium often described Thomas as appearing tired, the ALJ also noted Dr. Subramanium described Thomas as "well developed, well nourished, and in no apparent distress." (Tr. at 21). Thomas's cranial nerves, motor and sensory function, reflexes, gait, and coordination were consistently intact, and he had normal range of motion, strength, and tone at his annual physicals in 2019, 2021, 2022, 2023, and 2024. *Id*. Dr.

7

Subramanium treated Thomas with antiseizure medication, antinausea medication, and made multiple adjustments throughout the relevant period to address side effects and reported breakthrough seizures. *Id*. Although Dr. Subramanium noted that Thomas had minimal improvement over the course of treatment, with seizures typically occurring several times a week, Thomas reported an ability to perform variety of daily activities with no problems—bathing, dressing, eating, walking, toileting, grocery shopping, cooking, and doing housework—at office visits in April 2022 and January 2024. (Tr. at 20). Although Thomas endorsed trouble with balance, he denied having to use an assistive device, a history of falling, or a fear of falling. (Tr. at 20–21). At the hearing before the ALJ, Thomas acknowledged that he lived alone in a rural area. (Tr. at 22).

The ALJ noted that Thomas "had ER presentations for seizures, which sometimes occurred in the context of admitted noncompliance with medication and did not result in more than an overnight admission." (Tr. at 21). For instance, Thomas was seen in the emergency room in May 2018 and in April 2021 where contemporaneous notes indicated that Thomas had not been taking his antiseizure medication. (Tr. at 21–22, 487, 775). In May 2023, Thomas was brought to the Stone County Medical Center via ambulance complaining of multiple seizures and uncontrolled vomiting. (Tr. at 22, 643–45). He was diagnosed with hypokalemia and dehydration, and a CT scan found no acute intracranial abnormalities. (Tr. at 643).

8

Thomas responded well to intravenous potassium, seizure medication, and antinausea medication; he was discharged to his home with instructions to continue his seizure medication and follow up with Dr. Subramanium. (Tr. at 643–44).

In February 2024, Thomas was evaluated at UAMS Health Epilepsy and Neurology Clinic after Dr. Subramanium referred him. (Tr. at 879, 907). Thomas reported twelve to fifteen seizures per year, typically at night. (Tr. at 879). He would wake with loss of bladder, body soreness, and cheek bites. *Id*. He described "having staring seizures" within the past month where he was "staring, not aware, drooling." *Id*. Thomas was taking carbamazepine 300 mg twice daily, which had been increased a month prior, and he also used marijuana to treat his seizures. (Tr. at 879–82). Treatment notes indicate that Thomas was counseled not to use marijuana for treatment of seizures. (Tr. at 882).

The ALJ noted that Thomas's physical exam in February 2024 was "entirely normal." (Tr. at 21). A two-hour electroencephalogram (EEG), conducted on April 11, 2024, was normal in the awake, drowsy, and sleep states, with no epileptiform abnormalities noted. *Id*. The ALJ noted that an April 2024 MRI "demonstrated T2/FLAIR hyperintensity with loss of architecture of the hippocampal head, with imaging findings suggestive of autoimmune encephalitis and differential considerations including infectious encephalitis, postictal state, and less likely neoplastic etiology," but "there were no additional areas of signal abnormality in the

9

limbic cortex, with no significant expansion/mass effect seen." *Id*. The ALJ also observed that at Thomas's last documented seizure follow-up at UAMS in April 2024, his physical exam was again normal and unchanged from his February 2024 visit. *Id*. He was prescribed an additional antiseizure medication. *Id*.

The ALJ found the opinions of Dr. Rita Allbright and Dr. Martha Lauster, state agency medical consultants, persuasive.[2] (Tr. at 22–23). Both doctors found that Thomas could perform work at all levels of exertion but that he should avoid all exposure to hazards, such as machinery and heights. (Tr. at 22). Dr. Lauster additionally found that Thomas should never climb ladders, ropes, or scaffolds. *Id*. Both doctors acknowledged Thomas had breakthrough seizures with documented evidence of some noncompliance with treatment and unremarkable exams. *Id*.

Based on the evidence above, the ALJ found that Thomas's seizure impairment was severe and required limitations but that his impairment did not completely prevent him from working. The ALJ identified several reasons for rejecting Thomas's allegation of total disability, including repeated normal physical examinations; a two-hour EEG study that showed no evidence of seizure activity; Thomas's history of failing to take his medication; his ability to live alone, perform a wide variety of activities of daily living, and attend online college classes; and the

---

[2]Dr. Subramanium also provided a medical source statement, which the ALJ found was not supported by or consistent with evidence in the record. (Tr. at 23). Thomas does not challenge that finding on appeal.

medical opinions from two state agency consultants that Thomas could perform a wide variety of exertional work with seizure limitations. The ALJ noted that Thomas reported his seizures typically occurred at night and that his most recent daytime seizures were focal, staring seizures. Despite Thomas's allegation otherwise, the ALJ's conclusion is supported by substantial evidence in the record. This Court will not reverse the ALJ's decision simply because an opposing conclusion could have been reached.

In sum, the ALJ weighed the appropriate factors and provided good reasons for rejecting Thomas's claim of total disability. Because the ALJ's decision lies within the available zone of choice, it should be affirmed.

### 2. Step Three

Next, Thomas argues that the ALJ erred by failing at step three to find that Thomas's seizure impairment was medically equivalent to Listing 11.02, Epilepsy. Although evidence in the record shows that Thomas had both tonic-clonic and focal seizures, he did not have either seizure type to the severity necessary to meet the criteria in Listing 11.02. Instead, Thomas argues that the ALJ should have considered the frequency and severity of both types of seizures combined when determining whether Thomas medically equaled the requirements of Listing 11.02.

Listing 11.02 requires that a claimant, despite adherence to prescribed treatment, have: (1) a generalized tonic-clonic seizure *at least once a month for three*

*consecutive months*, or (2) a dyscognitive seizure, such as a focal seizure, *at least once a week for three consecutive months.*[3] 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02 (A)–(B) (emphasis added). Thomas maintains that although he did not meet the specific frequency requirements for either tonic-clonic or focal seizures under Listing 11.02, he had seizures—of both varieties—over the course of three consecutive months that affected his daily life.

The claimant bears the burden of proving his impairment meets or medically equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (2013)). To meet a listing, an impairment must meet all the listing's specified criteria. *Sullivan*, 493 U.S. at 530. The standards for listed impairments are strict because, when met, they automatically end the five-step inquiry. *Id.* at 532 ("the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary").

To be medically equivalent, an impairment must "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Medical equivalence can be found: (1) where a claimant has an impairment described in the listings but does not exhibit all of the findings of the

---

[3]The frequency requirements change slightly if there is also evidence of a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintain pace; or adapting or managing oneself. Thomas does not argue that he exhibited any marked limitation.

particular listing or exhibits all the findings but one or more is not as severe; (2) where a claimant has an impairment not described in the listings but has a closely analogous impairment; or (3) where a claimant has a combination of impairments, no one of which meets a particular listing. *Id*. §§ 404.1526(b), 416.926(b). In the first instance—where a claimant has an impairment described in the listings but does not exhibit findings as severe as required by the listing, the ALJ will find medical equivalence where the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria. *Id*. §§ 404.1526(b)(ii), 416.926(b)(ii). Whether an impairment or combination of impairments medically equals the requirements of a listed impairment is an issue reserved to the Commissioner. Social Security Ruling 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). Lastly, ALJs need not articulate specific findings as to why medical equivalency is not met because "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id*.

Here, the ALJ found that Thomas did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 11.02. Specifically, the ALJ found that Thomas's "seizure disorder does not rise to the level of a listed impairment under Listing 11.02, *Epilepsy*, due to a lack of record evidence

13

supporting." (Tr. at 18). Thomas acknowledges that he did not clearly meet Listing 11.02's strict criteria for either tonic-clonic or focal seizures between February and April 2024, because he did not have a tonic-clonic seizure each month and he did not have a focal seizure every week for those three months. *Doc. 9, at 15–16*. Instead, Thomas maintains that because he had both types of seizures combined over the course of the three-month period, the ALJ should have found that his seizure impairment medically equaled Listing 11.02. Thomas offers no legal authority to support that he can combine his seizure types to satisfy Listing 11.02's frequency requirements.

Even assuming Thomas could combine his tonic-clonic and focal seizures to meet the requirements of Listing 11.02, evidence in the record does not rise to the level of medical equivalence. The record indicates that in February 2024, Thomas reported to his physician that he had bite marks on his lips when he woke indicating he might have had seizures in his sleep. (Tr. at 805). He also reported a "mini seizure" while with his parents on February 21, 2024, where he was staring, unresponsive, and biting his lip. *Id*. On March 18, 2024, Thomas had two focal seizures that were witnessed. (Tr. at 872). On April 30, 2024, Thomas reported he had a focal seizure on April 17, two on April 18, and another on April 20. (Tr. at 825). Taken as a whole, the evidence of seizure activity for the three-month period between February and April 2024 was not equal in severity or duration to the

14

requirements of Listing 11.02. Because substantial evidence in the record supports the ALJ's finding that Thomas did not meet or medically equal the specific criteria of Listing 11.02, the Commissioner should be affirmed on this point.

### 3. Hypothetical

Thomas's final argument centers on the hypothetical posed to the VE by the ALJ, which Thomas argues did not fully account for his limitations. Specifically, Thomas maintains that the ALJ did not question the VE regarding jobs available to Thomas if he needed an unscheduled break or more time to complete his work, which Thomas contends are limitations his seizure impairment require.

"Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence." *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir. 1996) (citing *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)). The ALJ's hypothetical question to the VE need only include those impairments that the ALJ found substantially supported by the record as a whole. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). "[T]he ALJ [is] not obligated to include limitations from opinions he properly disregarded." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).

At the hearing, the ALJ asked the VE three hypotheticals, each pertaining to an individual matching Thomas's age, education, and work experience. (Tr. at 70–71). The first hypothetical contained no exertional limitations but required seizure

15

precautions, including no unprotected heights, no use of firearms, no operation of motor vehicles, and no ropes, ladders, or scaffolding. (Tr. at 70). This first hypothetical matched the limitations the ALJ eventually included in the RFC. (Tr. at 19). In the second hypothetical, the ALJ added that the individual was limited to simple, routine, repetitive tasks with the ability to make simple work-related decisions. (Tr. at 71). In the third, the ALJ included that the individual would experience five unscheduled absences per month. (Tr. at 70–71).

The ALJ found that Thomas was not as limited as he alleged, crafted an RFC based on the credible limitations, and asked the VE a hypothetical that matched that RFC. In essence, Thomas's argument that the hypothetical is deficient is simply asking the Court to reweigh the ALJ's RFC determination. Because the ALJ's hypothetical to the VE matched the RFC finding, which was based on substantial evidence, there is no merit to Thomas's argument that the hypothetical is deficient.

## IV.    Conclusion:

For the reasons stated above, substantial evidence supports the decision that Thomas was not disabled, and the Court recommends that judgment be entered in favor of the Commissioner.

IT IS SO ORDERED this 23rd day of March, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

16